IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

GARRY A. BORZYCH,

       Plaintiff,       OPINION AND ORDER

 v.

                   09-cv-21-bbc

MATTHEW J. FRANK, RICHARD RAEMISCH,
JOHN BETT, TIMOTHY LUNDQUIST,
LORI SIMON and THERESA MURPHY,

       Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

   In this civil action brought under 42 U.S.C. § 1983, plaintiff Garry A. Borzych is proceeding against defendants Matthew Frank, Richard J. Raemisch, John Bett, Timothy Lundquist, Lori Simon and Theresa Murphy on his claims that they violated his rights under the First Amendment and the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. §§ 2000cc-1(a)(1)-(2), when they denied him wooden runes, a bag to hold them, rune cards and a sacred cloth. Also, he is proceeding on a Fourteenth Amendment equal protection claim that defendants discriminated against him on the basis of his religion when they allowed inmates of other faiths to possess religious tools and objects but denied his request for religious objects.

1

Now before the court is defendants' motion for summary judgment. Because plaintiff has failed to respond, there is no material issue of fact in dispute and insufficient evidence to raise a triable issue on any of his claims. Therefore, I will grant defendants' motion for summary judgment.

From the facts proposed by defendants, I find the following facts to be material and undisputed.

## UNDISPUTED FACTS

### A. Parties

At all times material to this action, plaintiff Garry A. Borzych was an inmate at the Waupun Correctional Institution in Waupun, Wisconsin. He is incarcerated now at the Green Bay Correctional Institution in Green Bay, Wisconsin. Defendant Matthew J. Frank was Secretary of the Wisconsin Department of Corrections from January 6, 2003 through August 29, 2007. Defendant Richard J. Raemisch was Deputy Secretary of the Wisconsin Department of Corrections and became Secretary on September 1, 2007. Defendant John Bett is the administrator of the Division of Adult Institutions for the Wisconsin Department of Corrections. Defendant Timothy Lundquist is the warden at Dodge Correctional Institution and serves as a member of the Department of Corrections Division of Adult Institutions Religious Practices Advisory Committee. Defendant Lori Simon is a program

2

supervisor at the Kettle Moraine Correctional Institution, but at all times material to this action, she was a program supervisor at the Waupun Correctional Institution. Defendant Theresa Murphy is an inmate complaint examiner.

### B. Department of Corrections Policies

The purpose of the Religious Practices Advisory Committee is to review inmate religious issues that arise within the department; consult with staff, volunteers, community religious groups and the Wisconsin Department of Justice on these issues; apply, review and revise internal religious policies and procedures; and resolve any religious issues in a way that promotes consistency and fairness among the various religious faiths. The religious beliefs and practices afforded to inmates are set forth in Internal Management Procedure DOC 309 IMP 6, "Subject: Religious Briefs and Practices," dated January 6, 2006. (This procedure was replaced by Division of Adult Institutions Policy #309.61.01 in July 2006.) The procedure provides that inmates may exercise their religious beliefs and practices in the following ways: 1) group services; 2) religious diet requests; 3) individual study; 4) personal meditation; 5) use of religious books and property; 6) individual religious observance in their living quarters; 8) correspondence with fellow believers; 9) pastoral visits; and 10) requests to abstain from work or programs on religious days of observance.

Internal Management Procedure DOC 309 IMP 6A, "Subject: Religious Property"

(effective May 1996), governs inmate access to religious property. A chart attached to this procedure sets forth the minimum property items that inmates in approved umbrella religions may have access to or possess as religious personal property. Religious property items have been reviewed and approved based on security and safety considerations, and the list is revised from time to time to conform with changing religious practices. Security concerns and space limitations require the Division of Adult Institutions to set limits on allowable property. Although the procedure applies to all adult institutions, each institution has the authority to apply it in a manner consistent with their specific security levels and concerns.

Runes are not allowed in any form other than personal writings in the Book of Shadows because the use of symbols or codes in a correctional environment is not easily reviewable by security staff to determine the existence of a security concern. Inmates could use such code to communicate about gang activity, plan an escape, incite a riot or group resistance or plan to injure themselves, another inmate or staff. This inability to readily review the content of communications in code would threaten the safety of the institution and the community. Also, runes may be easily altered to change a harmless communication into one ordering a violent activity.

Moreover, runes can be traced to European and Nordic ancestry, including the Nazi regime. The Department of Corrections and the religious practices advisory group have been

informed that runes have been used by white supremacy groups. These groups are prohibited in Wisconsin correctional institutions because they have created racial tensions and an intolerable risk of violence in prisons, given their racial make-up. Inmate gangs sometimes seek legitimacy by affiliating themselves with a particular religious group. The formation of inmate gangs must be monitored continuously because of the propensity to violence among inmates associated with gangs.

The least restrictive means of addressing these safety and security concerns is to ban runes and rune cards. If these items were allowed in group services, inmates could use them to communicate secretly. Limiting runes to cell use would permit inmates to pass the symbols from cell to cell and to hide them in clothing, hair or property.

No other religious property item from any other religious umbrella group creates the types of security concerns associated with runes. Approved, non-religious items such as dominoes do not create security issues. Dominos are used in a game, much like playing cards. They are not used as a means of communication between inmates. Any property, whether religious or non-religious, that is considered a code, symbol or language that cannot be interpreted by security staff is prohibited.

In September 2009, the religious property chart was revised to allow inmates in the Pagan umbrella group to have one deck of Tarot cards. Tarot cards consist of a deck of 78 cards, all of which have a picture or image and are used most commonly for divination

5

purposes. The cards must be the "Aquarian Tarot" deck by David Palladini, which is published by U.S. Game Systems, Inc. No other version of the cards is allowed. These cards were chosen carefully in order for security staff to be familiar with the symbols. Each card has a defined meaning and cannot be used for inmates to write or communicate with each other outside the cards' meaning.

### C. Plaintiff's Religious Practice

In March 2005, plaintiff signed a religious preference form (DOC-1090), indicating his religious preference as Odinism, a religion that falls under the Pagan umbrella group. An inmate who designates a religion that falls under the Pagan umbrella group may have the following property for his personal use: oil for religious purposes; Book of Shadows; Calendar (with moon phases identified); feather (any bird feather except eagle, hawk or owl); salt and pentacle dish; and emblem. He may have access to the following religious property for group uses, as long as the spiritual leader brings the items to the institution and maintains control of them: bell; cauldron; chalice; feather (any bird feather except eagle, hawk or owl); incense sticks, incense holders, burner and lighter; pentagram; and wooden wand.

On February 16, 2006, plaintiff requested a scared cloth, a rune bag and a set of runes either made of wood or a rune set made of stag horn (antlers), or in the alternative, a set of

6

rune cards made of sacred paper. A wood rune is about the size of a quarter, and a rune card is approximately the size of a regular playing card. Runes consist of a series of symbols that form a non-traditional alphabet used by practitioners of Odinisim. Defendant Lundquist recommended that this request be denied because runes were not allowed in any form other than as personal writings in the Book of Shadows. The Book of Shadows contains religious text and can be used as a personal journal or workbook. In addition, inmates may order educational books that discuss religious belief and practices related to runes. Because runes and rune cards are not allowed, there is no independent reason to provide inmates with a rune bag or rune cloth.

OPINION

A.  RLUIPA and the Free Exercise Clause

The Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc-1, prohibits the government from imposing "a substantial burden on the religious exercise of a person residing in or confined to an institution" unless the burden furthers a "compelling governmental interest," and does so by "the least restrictive means." Cutter v. Wilkinson, 544 U.S. 709, 714-15 (2005). The act is designed to "protect[] institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." Id. at 721. The

7

free exercise clause of the First Amendment similarly protects persons from substantial government burdens on the exercise of their religion. Hernandez v. Commissioner of Internal Revenue, 490 U.S. 680, 699 (1989). The protections offered by the free exercise clause are more limited than those extended under RLUIPA. Although RLUIPA protects "any exercise of religion, whether or not compelled by, or central to, a system of religious belief," 42 U.S.C. § 2000cc-5(7), the United States Supreme Court has held that the First Amendment protects only "the observation of a central religious belief or practice." Hernandez, 490 U.S. at 699.

Under either the First Amendment or RLUIPA, plaintiff first must establish that defendants placed a substantial burden on the exercise of his religious beliefs. Koger v. Bryan, 523 F.3d 789, 797-98 (7th Cir. 2008); Vision Church v. Village of Long Grove, 468 F.3d 975, 996-97 (7th Cir. 2006). A "substantial burden" is "one that necessarily bears a direct, primary, and fundamental responsibility for rendering religious exercise . . . effectively impracticable." Civil Liberties for Urban Believers v. City of Chicago, 342 F.3d 752, 761 (7th Cir. 2003); see also Koger, 523 F.3d at 798-99 (applying Civil Liberties standard to prisoner RLUIPA claim). Plaintiff has adduced no evidence showing that defendants burdened his ability to exercise his religion, substantially or otherwise. In fact, he alleges in his complaint that he has practiced his religion since 1998 without runes or rune cards. Plaintiff is allowed to possess a number of items as religious property in his practice of

8

Odinism, including oil, the Book of Shadows, a calendar, a feather, a salt and pentacle dish, a religious emblem and tarot cards.  He can participate in group services in which a spiritual leader may use a bell, cauldron, chalice, pentagram, wooden wand and incense sticks, holders, burner and lighter.  Further, plaintiff can use his Book of Shadows to write rune and order other religious books concerning runes.

In any event, defendants have shown that the denial of runes and rune cards furthers a legitimate and compelling state interest and is the least restrictive means available.  Cutter, 544 U.S. at 726 (under RLUIPA, if request is "excessive, impose[s] unjustified burdens on other institutionalized persons, or jeopardize[s] the effective functioning of an institution, the prison [is] free to resist the imposition"); Conyers v. Abitz, 416 F.3d 580, 585 (7th Cir. 2005) (First Amendment right to free exercise of religion subject to legitimate penological demands of state).  The undisputed facts show that allowing inmates to have runes or rune cards either in their cells or in group services jeopardizes the safety and security of other inmates, staff and the institution.  The symbols used on runes allow inmates to communicate in code, preventing security staff from deciphering whether a security concern exists.  Runes also are associated with white supremacist groups, which are prohibited in correctional institutions because they create racial tensions and an intolerable risk of violence.  Lindell v. Casperson, 360 F. Supp. 2d 932, 954-55 (W.D. Wis. 2005).  Therefore, defendants have a compelling interest in banning runes and rune cards.  Id.   Given the difficulty that

9

defendants have described in being able to control inmates' use of Runes, I conclude that an outright ban is likely the least restrictive means of meeting the compelling interest. Therefore, I will grant defendants' motion for summary judgment as it relates to plaintiff's claims that defendants violated his rights under the free exercise clause and RLUIPA when they denied his requests for runes or rune cards.

### B. Establishment Clause and Fourteenth Amendment

With respect to discrimination claims based on religion, the analysis is the same whether the claim is viewed under the establishment clause or the equal protection clause. Board of Education of Kiryas Joel Village School Dist. v. Grumet, 512 U.S. 687, 715 (O'Connor, J., concurring) ("[T]he Religion Clauses . . . and the Equal Protection Clause as applied to religion—all speak with one voice on this point."). The question is whether defendants were singling out particular religions for special treatment without a secular reason for doing so. Cruz v. Beto, 405 U.S. 319 (1972); Kaufman v. McCaughtry, 419 F.3d 419 F.3d 678, 683-84 (7th Cir. 2005). The establishment clause of the First Amendment "commands a separation of church and state," Cutter, 544 U.S. at 710, by preventing the government from promoting any religious doctrine or organization or affiliating itself with one. County of Allegheny v. American Civil Liberties Union, 492 U.S. 573, 590 (1989). A governmental policy violates the establishment clause if "(1) it has no secular purpose, (2)

10

its primary effect advances or inhibits religion, or (3) it fosters an excessive entanglement with religion." Kaufman, 419 F.3d at 683 (citing Lemon v. Kurtzman, 403 U.S. 602, 612-13 (1971)); Books v. City of Elkhart, 235 F.3d 292, 301 (7th Cir. 2000). Under the equal protection clause of the Fourteenth Amendment, plaintiff must establish that a state actor both treated him differently from other similarly situated individuals and did so purposefully. DeWalt v. Carter, 224 F.3d 607, 618 (7th Cir. 2000).

Plaintiff has submitted no evidence that defendants singled out the Pagan religion for special treatment without any secular reason for doing so. It is undisputed that defendants prohibit all property, whether religious or non-religious, that is considered a code, symbol or language that cannot be interpreted by security staff. No approved religious property associated with any other religious group creates the level of security concern associated with runes.

In his complaint, plaintiff alleges that other prisoners are allowed to have dominoes, which are not used for religious purposes. However, defendants have shown that unlike runes, dominoes cannot be used to communicate with other inmates secretly and are not associated with white supremacists. Accordingly, defendants are entitled to judgment in their favor on plaintiff's First Amendment establishment clause and Fourteenth Amendment equal protection claims.

11

## ORDER

IT IS ORDERED that the motion for summary judgment, dkt. #16, filed by defendants Matthew J. Frank. Richard Raemisch, John Bett, Timothy Lundquist, Lori Simon and Theresa Murphy is GRANTED. The clerk of court is directed to enter judgment in favor of defendant and close this case.

Entered this 17th day of March, 2010.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge